## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF MARYLAND

| | |
|---|---|
| Robert C. Little and Pamela A. Little,<br>Surf Village Unit 1, 3135 Atlantic Ave.<br>Ocean City, MD 21842<br><br>      **Plaintiffs**<br><br>    **v.**<br><br>MAYOR AND CITY COUNCIL OF OCEAN<br>CITY, MARYLAND<br>301 Baltimore Ave<br>Ocean City, MD 21842;<br><br>BLAINE SMITH in his Official and Individual<br>Capacity<br>Assistant Director of Planning and Zoning<br>Town of Ocean City<br>301 Baltimore Ave<br>Ocean City, MD 21842<br><br>TERRANCE MCGEAN in his Official and<br>Individual Capacity<br>City Engineer<br>Town of Ocean City<br>301 Baltimore Ave<br>Ocean City, MD 21842<br><br>MARK J. BELTON<br>Secretary of Maryland Dept. Natural Resources<br>Dept. Natural Resources<br>580 Taylor Ave. E-4<br>Annapolis, MD 21401<br><br>EMILY WILSON in her Official and Individual<br>Capacity<br>Director, Land Acquisition and Planning<br>Dept. Natural Resources<br>580 Taylor Ave. E-4<br>Annapolis, MD 21401; and | Case No.: |

---

**COMPLAINT FOR CONSTITUTIONAL**
**VIOLATIONS AND EQUITABLE RELIEF**

1

JORDON R. LORAN in his Official and
Individual Capacity
DIRECTOR, ENGINEERING &
CONSTRUCTION
Dept. of Natural Resources
D-3, Tawes State Office Bldg
Annapolis, MD 21401

        **Defendants.**

## VERIFIED COMPLAINT

COMES NOW, Plaintiffs ROBERT C. LITTLE and PAMELA A. LITTLE, by and through their

counsel, Athan T. Tsimpedes, Esq. and complains of Defendants and states as follows:

## INTRODUCTION

1.      This matter arises under federal law in that the Defendants, State Officials, Local

Authorities, and their agents, acting under color of law, and within their official duties

wrongfully interfered with Plaintiffs' property rights and their use and enjoyment pursuant to 42

U.S.C. section 1983 for violations of the 5[th,] and 14th Amendments to the U.S. Constitution.

Plaintiffs' sought the use and enjoyment of their property that allowed them to build out and

expand their valuable oceanfront residence located in Ocean City, Maryland up to the property's

building restriction line, which rights existed when Plaintiffs' purchased the property.

2.      In 2015, Plaintiffs sought a building permit pursuant to those rights of expansion[1], at

great cost and expense, by hiring architects and contractors for the build out.   Plaintiffs'

applications for the permit to expand their property with a four-story addition was submitted and

approved by the Town of Ocean City Maryland ("City").  In reliance on the validly issued permit

---

[1] Established and supported, at least in part, since 2005 and approved by the City as stated in
more detail herein.

[2] Although not a diversity case, Maryland State law, to the extent it applies to any part of this
complaint, requires Plaintiffs not to plead a specific amount but to state generally they seek more
than $75,000.00, and do so here. See Maryland Rule 2-305

**COMPLAINT FOR CONSTITUTIONAL**        2
**VIOLATIONS AND EQUITABLE RELIEF**
[3] By written agreement between the City and Md. Board of Public Works dated January 8, 1987

and representations by the City through its agents, the Plaintiffs made substantial changes to the land and property, made substantial expenditures, and incurred substantial contractual obligations. Over a month later the City rescinded the permit upon discovering that the Assistant Director of Planning and Zoning had erred in calculating side yard setback and parking requirements. It was at that time revealed that back in 1975 the City had without notice taken actions that significantly interfered with Plaintiffs vested property rights, without compensation, in violation of the 5th and 14th Amendments to the U.S. Constitution and the Constitution of the State of Maryland Art. III, §40, and Declaration of Rights, §24.

## I. JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction under 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff also invokes the supplemental jurisdiction of this Court with respect to claims based upon applicable State laws pursuant to 28 U.S.C. § 1367[2]; and declaratory relief pursuant to 28 U.S.C. § 2201.

4.      Venue is proper as the acts complained of giving rise to this lawsuit occurred in the State of Maryland pursuant to 28 U.S.C §1391.

## II. THE PARTIES

5.      Plaintiffs Robert C. Little and Pamela A. Little, husband and wife, reside in

---

[2] Although not a diversity case, Maryland State law, to the extent it applies to any part of this complaint, requires Plaintiffs not to plead a specific amount but to state generally they seek more than $75,000.00, and do so here. See Maryland Rule 2-305

Montgomery County, Maryland.  They are owners of the property that forms the basis of the subject matter of this litigation that is located at Surf Village Unit 1, 3135 Atlantic Ave. Ocean City MD 21842 (hereinafter referred to as the "property" or "subject property.")

6.      Defendants, the Mayor and City Council of the Town of Ocean City Maryland (hereinafter referred to as "City" or "CITY"). The Town of Ocean City Maryland is a local Government for purposes of any State issues and is not part of the State of Maryland for purposes of the 11th Amendment. *See   Monell v. Department of Social Serv.,* 436 U.S. 658 (1978), a municipal government can be held liable under Section 1983.

7.      Defendant BLAINE SMITH (hereinafter "SMITH"), is being sued in his individual and official capacity.  SMITH is the former Assistant Director of Planning and Zoning for the Town of Ocean City Maryland.  At all times relevant, SMITH was acting in his official capacity when making representations as part of a custom, policy or practice, and when issuing the building permit for the expansion of the property belonging to the Plaintiffs.

8.      Defendant TERRANCE MCGEAN (hereinafter "MCGEAN") is being sued in his individual and official capacity.  At all times relevant MCGEAN was and is the City Engineer for the Town of Ocean City, and at all times relevant, while tasked with matters relating land acquisition by the City Manager, acted under color of law and within the scope if duties, as it related to the Plaintiffs' property rights as stated herein.

9.      Defendant Mark J. Belton, is being sued as the Secretary of Maryland Department of Natural Resources in his Official and Individual Capacity.  Defendant BELTON is in charge of the Maryland Department of Natural Resources (hereinafter "DNR"),  a government agency in the state of Maryland charged with maintaining natural resources including state parks, public lands, state forests, state waterways, wildlife and recreation areas. Its headquarters are in

Annapolis, Maryland.  This lawsuit seeks prospective equitable relief under 42 U.S.C. §1983 to compel the recognition of the Plaintiffs vested property rights and to compel specific performance of the return of property to the CITY.

10.     Defendant JORDON R. LORAN (hereinafter "LORAN") is being sued in his official and individual capacity.  At all times relevant, LORAN was the Director of Engineering & Construction for the State of Maryland Department of Natural Resources (DNR),  acting under color of law, and tasked with matters relating to construction of the Atlantic Coast Hurricane Protection Project.

11.     Defendant EMILY WILSON ("WILSON") is being sued in her official and individual capacity.  At all times relevant, Wilson was the Director of Land Acquisition and Planning for Maryland Department of Natural Resources and under color of law, was acting within her official duties that included acquiring property affecting Plaintiffs property rights as more fully described herein.

12.     At all times relevant,  LORAN and WILSON, while acting under color of law, acted arbitrary, deliberately indifferent, and/or contrary to the Plaintiffs' property and civil rights to violate the constitutional rights of the Plaintiffs as more fully described herein.

## MATERIAL FACTS

13.     At all times relevant, the property owners of Surf Village, including the plaintiffs, held the same property rights to build and expand their existing structure to the building restriction line.

14     On May 18, 1994, Plaintiffs purchased the subject property.  Plaintiffs understood and purchased the said property with the understanding that they had a right to expand their  property the building restriction line.

15.     Plaintiffs property, consisting of a fee simple oceanfront townhouse, located in Ocean City, Maryland in a residential development called Surf Village.

16.     Circa 1966, the Surf Village townhomes were developed by Charles Lynch along with three other similar developments in Ocean City.  Lynch retained the unbuildable side lots to these developments as the lots were too narrow to legally built upon.   In the case of Surf Village, the side lots were 10.5 ft wide and served as open space between the end units, including the parcel adjacent to Plaintiffs' property (hereinafter referred to as "Parcel A"), and the city sidewalk.

17.     On July 20, 1970 the Town of Ocean City Maryland adopted its first Comprehensive Zoning Ordinance ("Ordinance").  The Ordinance established a setback requirement for all townhouses under the Code section 9-106(b)(2)(e), requiring five-foot setbacks for 1, 2 and 3 story buildings and ten-foot setbacks for 4 and 5 story buildings. At the time of that Surf Village was constructed in 1966, there were no side yard setback requirements.

18.     Since laws cannot have a retroactive effect, without raising constitutional issues and unless proper notice was given (in this case there is no records indicating there was), this law would only apply to new construction after the Ordinance was passed in July 1970**.**

19.     On  September 15, 1975,  Mr. Lynch gifted the eight parcels, including parcel A, to the City without giving proper public notice of the conveyance to the adjacent property owner or as required under the laws of Maryland or the Code of Ocean City. *See OC Code, Title VII § C-414, Powers of Council, no. 49.*

20.     By accepting the lots the City created a zero side yard setback, thereby handicapping those end unit owners and effectively eliminating any new expansion, and thereby unlawfully taking from Plaintiffs their rights and ability to build on their fee simple properties eastward -- a

property right which the interior units still possessed.

21.     At the time of the 1975 conveyance, the City either could not or should not have,

accepted the parcels, or once having accepted, should have deeded the parcels over to the end

unit owners to avoid the newly created setback issue that affects only the adjacent landowners,

like the Plaintiffs, while the interior units are not affected.  This constituted an unequal and

unfair application of the ordinance, in that only Plaintiffs would be harmed by the Ordinance that

did not exist at the time of the original conveyance, thereby raising an equal protection violation

under the 14th Amendment to the U.S. Constitution.

22.     In 1985 all eighteen units of Surf Village were destroyed by fire.  They were all

originally three-story structures but were all allowed to  rebuild their units as four-floor units.

By so doing the Plaintiffs were treated in the same matter relative to expansion as the interior

units, thereby showing that the ordinance was not meant to create an unequal application of the

law to affect the end unit owners differently than the interior unit owners.  The side setback

requirement was not raised by the City at the time of the 1985 rebuild.  Technically the side yard

setback would have prevented the end units from building the fourth floor. It also thereby created

a "nonconforming use" related to the side yard setback requirements.

23.     In the Spring of 2005, the City lengthened 32nd Street towards the ocean to

accommodate the newly constructed Hilton Hotel complex and parking garage.

24.     The Plaintiffs contacted the City Engineer, Terry McGean ("MCGEAN"), about the

placement of a curb cut connecting the newly extended 32nd Street to their property, similar to

what was being put in for the Hilton parking garage, so that the Plaintiffs could create a driveway

from the street over parcel A to their property.

25.     The planned driveway would cross over Parcel A, which was owned by the City, and

would be used for vehicular ingress and egress to a concrete pad that was to be used for convenience parking as well as serve as a patio.

26.     On April 26, 2005, the Plaintiffs applied for the necessary building permit for the driveway and parking pad which covered an area 25' x 46' (1,150 sq. ft.).  **(See Exhibit - ).**

27.     On May 3, 2005, the City granted the permit.  Construction of the driveway and pad began almost immediately. Large amounts of sand were removed.  Fill dirt and gravel was delivered and used to elevate the pad and driveway approximately one foot  so that the driveway would be flush with the curb cut.  Four, eight cubic foot foundations were also poured within the pad for a future 22' x 15' freestanding deck per discussions with the  City  Building Inspector, Kevin Brown.

28.     By granting the permit, and by inducing the Plaintiffs to invest consider funds for improvements, the City created a vested easement right over Parcel A in favor of the Plaintiffs property.  *See Olde Severna Park v. Barry, 188 Md App. 582, 624 (2009)(*implied easement).

29.     On June 1, 2005, without proper notice to Plaintiffs and without having recorded an easement for the driveway, the City conveyed Parcel A to the State of Maryland Department of Natural Resources as part of an agreement with the State of Maryland Department of Natural Resources("DNR")[3] and the Army Corp of Engineers[4] ("Army") for the construction of the Atlantic Coast Hurricane Protection Project which was federally funded. At the time of the conveyance, the City had a duty of care to inform the DNR of the easement rights over parcel A in favor of the Plaintiffs. [5]

---

[3] By written agreement between the City and Md. Board of Public Works dated January 8, 1987 that received federal assistance.

[4] By written agreement dated March 30, 1990, between U.S. Army Corp of Engineers and the City relating to funding of the Atlantic Coast Hurricane Protection Project.

[5] Despite not being recorded by deed, the CITY, DNR and its agents were on inquiry notice of

30.     Plaintiffs never received any notice of the land transfer affecting their easement rights and beneficial use of Parcel A by the Federal or State authorities including the DNR.

31.     In the Spring of 2014, the Plaintiffs, with no knowledge of the conveyance of Parcel A to DNR and the fact that no easement had been recorded with the deed, sought to exercise their property rights to build an addition to their home in Ocean City.

32.     Plaintiffs contacted MAD Engineering Inc., seeking a specific notable architect and engineer, Harry How III ("HOW"), to conduct a feasibility study relating to building a four story (1700+ sq.ft) addition to their oceanfront home that was consistent with Plaintiffs' rights as they knew them to be.

33.     The Plaintiffs sought the assurance from the City that the addition was within their building rights, as they understood them to be, before investing substantial monies in architectural fees and entering into construction contracts.

34.     As a result, Plaintiffs agent, Harry How III, sought and obtained a meeting with the City Zoning Administrator, Blaine Smith ("SMITH").

35.     In the Spring of 2014, HOW met with SMITH, in his official capacity as the Assistant Director of Planning and Zoning, who reviewed the planned addition for the Plaintiffs' property and represented that he saw no impediments to building the addition, thus confirming, affirming and condoning Plaintiffs' property rights existed for the requested expansion.

36.     In justifiable reliance on the representations of SMITH, an agent and official of the City, and acting within his official duties and title at the time, the Plaintiffs retained Mr. How's firm to create the architectural drawings.  Plaintiffs also solicited bids from local building contractors for

the driveway and easement burdening Parcel A in favor of the Plaintiffs that was open and obvious to anyone visually inspecting the property including Plaintiffs' neighbors of the  prior to an after the conveyance from the CITY to the DNR.

the addition to their property that followed.

37.     On December 23, 2014, in further reliance on the representations of the City, the

Plaintiffs contracted with Bally Services, Inc., a construction company, to build the new four-

floor addition consistent with the plans that had been reviewed by SMITH.

38.     On January 2, 2015, Plaintiffs at great expense submitted an application for a building

permit to the City's Department of Planning and Community Development.

39.     On January 29, 2015, the City approved Plaintiffs' application and issued permit  #15-

27919 for the demolition and expansion of their 15 ft. wide townhouse.

40.     On or about February 5, 2015, the owner of Unit 6 of Surf Village, Mark Radowich, the

purported President of the Surf Village Homeowners Association, an informal organization with

no legal power, sent a letter to Jordan Loran ("LORAN"), Director Engineering and Construction

for the DNR, complaining about the Plaintiffs driveway and parking pad being on State owned

land and that there was no recorded easement allowing the Plaintiffs use of the of the State own

land, despite it having being used as a driveway and parking pad approved by the City since

2005, and prior to the City transferring Parcel A to the DNR.

41.     LORAN was also contacted by Unit owner 5, John Simcox, an Annapolis Attorney,

similarly noting the lack of a recorded easement and asserted that without the driveway access

there was not sufficient parking for the permitted expansion.

42.     On February 9, 2015, in  response to LORAN's inquiry to MCGEAN regarding the

background to Radowich and Simcox's complaint, MCGEAN informed LORAN of the history

relating to the driveway and parking pad.

43.     Despite having inquiry notice and actual notice as Plaintiffs apparent implied easement

rights,  on February 11, 2015, LORAN wrote to MCGEAN and SMITH, advising them that

DNR had not granted Plaintiffs the use of the driveway and access to their parking pad, thereby effectively reducing the one additional parking spot needed for the renovation.

44.     MCGEAN in turn wrote the Plaintiffs about this new development on February 12, 2015, and the fact that their project now lacked the necessary additional parking space.

45.     MCGEAN advised Plaintiffs various possible options. One possible option was to seek a parking variance.  However, on advice of the City Solicitor, Guy R. Ayers III, Ayres informed MCGEAN that was not a viable option as the Board of Zoning Appeals does not have authority to grant parking exceptions if it increases an existing nonconformity, which it would have in the instant case. Another possible option was to change the building design, i.e. reduce the number of bedrooms, so that the one additional parking space was not needed.[6]  McGean also noted that the DNR showed interest in returning some of the parcels that had been transferred to the DNR back in 2005, and that the Plaintiffs could purchase Parcel A, if that occurred.

46.     Trying to salvage what they could after expending substantial resources in time and money, Plaintiffs submitted new plans that reduced the total number bedrooms from five to four.

47.     Following extensive review of the new building permit application,  permit  #15-27919 was approved and re-issued on February 24, 2015.

48.     Construction began almost immediately with demolition of the main ocean side deck and the concrete parking pad to make way for the installation of the foundation.

49.     The foundation consisted of four structural wood pilings, driven 18 feet into the ground. The two pilings closest to the house required a steel reinforced cage and a poured concrete encasement for the pilings to a depth of eight feet below grade.  Additional structural steel was

---

[6] On the same day, HOW wrote LORAN about the agreement that had been in place between the City and the Plaintiffs evidence by the permit from April of 2005,  prior to the June 1, 2005 transfer of the property to the DNR (what amounted to an implied easement), and that the DNR should be bound by that agreement and understanding.

ordered and shipped to the jobsite along with other materials to continue construction of the addition.  Preparations for framing had also begun and were to commence within one weeks time.

50.     Wishing to enclose a small bayside fourth floor balcony, the Plaintiffs sought a variance for a four-foot reduction from the ten-foot setback requirement.  The setback was from the rear (westward facing) alley shared with the Thunderbird Motel.

51.     The hearing on the variance was set for early March but continued by the City to March 26, 2015.  At the hearing before the Board of Zoning Appeals ("BZA"), two of the Surf Village Unit owners sought to not only have the requested variance denied, but also to have the building permit itself rescinded.

52.     At the hearing the attorney representing the two homeowners confronted SMITH with the fact that the 1975 conveyance of Parcel A by Lynch to the City created a new side yard 10 ft. setback, which meant the permit did not comply with zoning requirements.

53.     SMITH freely acknowledged that he had erred both in calculating the setback as well as the parking requirements.

54.     As a result the BZA rescinded the building permit and issued a stop work order.

55.      Plaintiffs, variance request for enclosing the west side balcony was also denied.

56.     Shortly thereafter on April 5, 2015, DNR notified the City that it intended to return Parcel A, along with two other similar Parcels, to the City, as unneeded surplus from the Beach Replenishment Project. The DNR also notified the Plaintiffs of the same on April 6, 2015. MCGEAN informed the Plaintiffs that once the transfer was completed, they could purchase the lot, merge title with the existing property, and thereby be in a position to remove the impediments to obtaining a new building permit.

57.     Because the transfer process was anticipated to take several months, the Plaintiffs sought legal counsel to determine if they should seek a variance. Legal counsel advised them that it would be futile.  Rather, counsel advised that Plaintiffs seek a "Texted Amendment" (an amendment to the Zoning Code) that would give the Plaintiffs and other end unit owners the same rights and protections of law afforded to interior units.

58.     At a hearing before the BZA[7] on July 7, 2015, the proposed amendment, despite having the backing of SMITH, was denied.

59.     Rather than seeking legal recourse against the City, the Plaintiffs attempted to work with MCGEAN and the City on getting Parcel A transferred back to the City so that the Plaintiffs could purchase it from the City and thereby allow the project to resume.

60.     The proposed transfer back to the City made it through the State Clearinghouse review process, with the Plaintiffs the intended beneficiaries thereof, and was set on the agenda before the Bureau of Public Works ("BPW") for the August 2016 session.

61.     In July of 2016,  some of Surf Village neighbors hired Annapolis lobbyist Bruce Bereano to influence the transfer process.

62.     According to MCGEAN,  Mr. Boreano had apparently convinced the DNR to remove the transfer process from the BPW August agenda, and scheduled a July 26, 2016 meeting with DNR to discuss the matter.

63.     Upon information from MCGEAN, it was revealed that very shortly after the meeting took place, on August 1, 2016, the DNR through LORAN suddenly and arbitrarily informed the City that it intended to impose restrictions on what the transferred property could be used for,

---

[7] At the hearing, SMITH again acknowledged that he had erred in calculating setback and parking in issuing the building permit, and, acknowledged for the first time that the fourth floor portion of the 1985 fire rebuild was done in non-conformity with the setback regulations.

even though the property had never been used for the dedicated purpose intended and the

proposed expansion would have had no effect on the Beach Replenish Project.  Those

restrictions effectively meant that Parcel A could not be used to overcome the impediments that

caused the rescission of the building permit and thus rendered the Plaintiffs' project impossible.

64.     The Plaintiffs contacted State Senator James Mathias to intervene on their behalf but to

no avail, being informed that Bereano was one of, if not the most influential lobbyists in the

state, and that the Senator's office would not be able to assist.

65.     Apparently fearing that the "standard language"  that the DNR intended to insert in the

deed was ambiguous and might not be adequate,  Bereano convinced the DNR to impose

additional arbitrary restrictions on the deed, designed specifically to prevent the Plaintiffs'

project from ever going forward and specifically interfering with the CITY's agreement with the

Plaintiffs to benefit from its return as intended beneficiaries as stated herein.

66.     On November 3, 2016, JORDAN wrote to MCGEAN the following:

*"Terry:  As I mentioned to you a few weeks ago the condo owners are asking for*

*restrictive language in the deed to prevent the property from being used for development*

*purposes by the adjacent owner.  Following is the language requested by the condominium*

*owner:  ....."*

MCGEAN wrote back:

*"Jordan,  Based on our previous discussions my understanding was the*

*language was just standard DNR restrictions placed on property sales.  This is*

*completely different.  The council will have a big problem with the sentence in red and*

*so should all the owners in Surf Village.  When the council has sold these lots in the*

*past, they have required that the lot be deed consolidated with the adjacent property."*

67.     On December 19, 2016, MCGEAN meet with JORDAN and Bruce Bereano at the

DNR's office in Annapolis to discuss the restrictions that Bereano, on behalf of some of the

other unit owners,  wanted to have imposed.   In MCGEAN's follow up letter to JORDAN the

next day, MCGEAN closes with:

> *"I just wanted to set the record straight here since some of the hard line taken on the*
>
> *deed restriction seemed to be based on the assumption that the Littles had acted*
>
> *illegally, it does not appear to me that this is the case."*

68.     During the months of January and February of 2017 Bereano continued to seek the

assistance of DNR officials, specifically Emily Wilson, the Director of Land Acquisitions and

Planning, and JORDON.  A review of the emails exchanged between the three indicates that

WILSON and JORDON were more than willing to help Bereano achieve what he and his clients

wanted by way of precluding the Plaintiffs project from ever going forward.

69.     On March 6, 2017, Plaintiffs wrote to Emily Wilson (WILSON")  Director of Land

Acquisition and Planning at DNR, as well as MCGEAN, noting that the DNR's actions were

arbitrary in nature and that the property should be returned to City in the same condition as the

City had conveyed it to the DNR.

70.     At  the City Council  meeting on March 28, 2017, MCGEAN presented to the City

Counsel  the language that the DNR wanted to incorporate in the deed.  He also present Plaintiff

letter addressing DNR's arbitrary action.  The Council instructed MCGEAN to inform the DNR

that it wanted the property conveyed back to the City "with the fewest possible restrictions."

71.     According to MCGEAN, after relaying to the DNR  the City Council's position on the

proposed deed restrictions, the DNR  decided that the transfer of the property was too

controversial and that DNR was going to retain ownership of the parcel -- thus ending all hopes

for the Plaintiffs' project.

72.   On June 20, 2017, LORAN sent a letter to Plaintiffs indicating that DNR remained in ownership of Parcel 260 (Parcel A) and reasserting that the DNR  had not granted the Plaintiffs permission to use the parcel.

73.   The Plaintiffs spoke with the City Manager, Doug Miller, and the Ocean City Planning and Zoning Director, William Neville, on October 2, 2017, in hopes of receiving reimbursement for their out of pocket expenses rather than bringing legal actions against the City and its employees.  The City repeatedly indicated that a decision on the reimbursement request would be forthcoming.   To date the Plaintiffs still have not been informed of the City's decision.

**LEGAL BASIS FOR EQUITABLE AND DECLARATORY RELIEF**

74.   Equitable actions have "long been recognized as the proper means" to prevent public officials "from acting unconstitutionally." *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). Because such actions seek simply "to halt or prevent [a] constitutional violation rather than the award of money damages," they do "not ask the Court to imply a new cause of action." *United States v. Stanley*, 483 U.S. 669, 683 (1987). To the contrary, "[t]he ability to sue to enjoin unconstitutional actions by state (and federal officers) is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 536 (1925) ("Prevention of impending injury by unlawful action is a well-recognized function of courts of equity."); *Gilman v. City of Phila.*, 70 U.S. (3 Wall.) 713, 723–24 (1865) (holding that "a court of equity will interpose by injunction" to prevent "specific injury to an individual" caused by an act that is "repugnant to the Constitution"); *Carroll v. Safford*, 44 U.S. (3 How.) 441, 463 (1845) (expressing "no doubt" that "relief may be given in a

court of equity" to "prevent an injurious act by a public officer"); Mitford, *A Treatise on the Pleadings in Suits in the Court of Chancery by English Bill* 43 (2d ed. 1787) (noting that equitable relief traditionally required only "that the acts complained of are contrary to equity, and tend to the injury of the complainants, and that they have no remedy, or not a complete remedy, without the assistance of the court").

Courts have also long provided for declaratory rulings of exactly the type of case here. 28 U.S.C. § 2201 provides that a federal court, "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."). Moreover, "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *See Byers v. Byers, 254 F.2d 205, 209-10 (5th Cir. 1958) (internal quotation marks and citations omitted); See also Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).* Declaratory relief should not be denied where the controversy is of sufficient immediacy and reality. *See Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974).* The powers of court acting under a declaratory relief statute are broad. *See Gant v. Grand Lodge of Texas, 12 F.3d 998, 1001 (10th Cir. 1993).* In this case, a controversy exists as to the rights of the Plaintiffs as it pertains to Parcel A, including its 3rd party rights flowing from the CITY, that was to obtain the property from the DNR that was acknowledged and admitted to be returned as a matter of law under a reverter clause or Maryland statute. That the DNR has failed to return the parcel is intentional and malicious to deprive the Plaintiffs of a remedy and provides no adequate remedy at law unless the court enjoins the DNR and its agents or employees from interfering with the property and vested rights of the Plaintiffs.

**COUNT ONE**
**(FEDERAL STATUTE 42 U.S.C. 1983)**
**Violations of the 5th and 14th Amendments to US Constitution; Maryland Constitution Art.
III §40; Declaration of Rights §24 - Substantive Due Process- Temporary or Permanent
Taking - *Monell* Claims**
(Defendant Mayor and City and Council of Town of Ocean City Maryland)

75.     Plaintiff repeats and reiterates each of the allegations contained in the preceding

paragraphs.

76.      Pursuant to 42 U.S.C. § 1983, commonly referred to as "section 1983" provides:  "Every

person who under color of any statute, ordinance, regulation, custom, or usage, of any State or

Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the

United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

in an action at law, Suit in equity, or other proper proceeding for redress…."

77.     The conduct of the individual Defendants, and Defendant City, through their agents, as

aforesaid violated the custom, policies or practices of the Defendant City, under color of law, and

the constitutional and property rights of Plaintiffs; See *Monell v. Department of Social Serv.,* 436

U.S. 658 (1978), a municipal government can be held liable under Section 1983);

78.     The conduct of the CITY and/or each of the defendants' was in reckless disregard or in

deliberate indifference of the Defendants' and their agents duties and statutory authority

occurring as well as the interests and rights of the Plaintiffs and their property rights protected

under the 5th and 14th Amendments to the US Constitution.

79.     As a consequence of the individual defendants' actions, Plaintiffs have suffered

violations  of their substantive and procedural due process rights protected under the Fifth and

Fourteenth Amendments.

## COUNT TWO
### (FEDERAL STATUTE 42 USC 1983 –
**Violations of the 5th and 14th Amendments US Constitution, Maryland Declaration of Rights §24 - Substantive Due Process- Temporary or Permanent Taking)**
(Defendants DNR, Belton, Loran and Wilson in their Official and Individual Capacities)

80.     Plaintiff repeats and reiterates each of the allegations contained in the preceding paragraphs.

81.     42 U.S.C. § 1983, provides:  "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress…."

82.     The conduct of the individual Defendants, as aforesaid violated the custom, policies or practices of the DNR, under color of law, and the constitutional and property rights of Plaintiffs, that constituted arbitrary or conscience shocking conduct, and/or deviations from accepted standards custom, policies, practices or statutory authority in violation of the Fourteenth Amendment.

83.     As a consequence of the individual defendants' actions in their official capacity, Plaintiffs have suffered violations of their substantive and procedural due process rights protected under the Fifth and Fourteenth Amendment.

84.     As a consequence of the individual defendants' actions in their individual capacity, Plaintiffs have suffered violations of their substantive and procedural due process rights protected under the Fifth and Fourteenth Amendments.

**COUNT THREE**
**(INVERSE CONDEMNATION)**
**( Defendants  Mayor and City and Council of Town of Ocean City Maryland)**

85.     Plaintiff repeats and reiterates each of the allegations contained in the preceding

paragraphs.

86.     "Inverse condemnation" is a shorthand description of the manner in which a landowner

recovers just compensation for a taking of his property when condemnation proceedings have not

been instituted."  *See* _Coll. Bowl, Inc. v Mayor & City Council of Baltimore,_  *394 Md. 482, 489,*

*907 A,2d 153, 157 (2006) (citing* _United States v. Clarke_*, 445 U.S. 253, 257 (1980))*

An inverse condemnation claim exists where a plaintiff alleges a taking caused by a

"governmental inaction-- in the face of an affirmative duty to act."  *See* _Jordan v. St. Johns Cnty_*,*

*63 So. 3d 835, 839 (Fla. Dist. Ct. App. 20111) cited in* _Litz v. Maryland Department of_

_Environment_*, 446 Md 254, 266,  131 A.3d 923, 930 (2016)* as persuasive authority.

87.     The CITY had an affirmative duty to act in a manner consistent with the Plaintiffs vested

property rights.

88.     The CITY violated that duty by the actions it took, or failed to take, relating to the

conveyance Parcel A from Charles Lynch to the CITY in 1975.  Said inaction or inaction,

constituted a taking of Plaintiffs' vested right to expand their property without compensation.[8]

89.     As a direct and proximate cause of that breach the Plaintiffs sustain significant monetary

damages.

**COUNT FOUR**
**(INVERSE CONDEMNATION)**
**( Defendant  Mayor and City and Council of Town of Ocean City Maryland)**

---

[8] Additionally, defendants are preclude from the defense of immunity with respect to wrongful
taking of property without compensation. Litz v. Maryland Department of Environment, *446 Md
254, 274-75,  131 A.3d 923, 935 (2016)*

90.     Plaintiff repeats and reiterates each of the allegations contained in the preceding paragraphs.

91.     "Inverse condemnation" is a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *See* *Coll. Bowl, Inc. v Mayor & City Council of Baltimore,* 394 Md. 482, 489, 907 A,2d 153, 157 (2006) (citing *United States v. Clarke,* 445 U.S. 253, 257 (1980)) An inverse condemnation claim exists where a plaintiff alleges a taking caused by a "governmental inaction-- in the face of an affirmative duty to act." *See* *Jordan v. St. Johns Cnty,* 63 So. 3d 835, 839 (Fla. Dist. Ct. App. 20111) cited in *Litz v. Maryland Department of Environment,* 446 Md 254, 266,  131 A.3d 923, 930 (2016) as persuasive authority.

92.     The CITY and its employees, acting in their official capacity, had an affirmative duty to act in a manner consistent with the Plaintiffs vested property rights.

93.     The CITY violated that duty by the actions it took, or failed to take, relating to its failure to record an easement to Plaintiff's benefit prior to conveying Parcel A to the Department of Natural Resources in 2005.   As  a direct and proximate cause of that breach the Plaintiffs sustain significant monetary damages.[9]

### COUNT FIVE
### (INJUNCTIVE RELIEF)
(All Defendants)

94.     Plaintiff repeats and reiterates each of the allegations contained in the preceding paragraphs.

95.     The likelihood that the plaintiff will succeed on the merits;

---

[9] Additionally, defendants are precluded from the defense of immunity with respect to wrongful taking of property without compensation. *See* *Litz v. Maryland Department of Environment, 446 Md 254, 274-75,  131 A.3d 923, 935 (2016)*

96.     The "balance of convenience," determined by whether greater injury would be done to the defendant by granting the injunction than would result from its refusal;

97.     Whether plaintiff will suffer irreparable injury unless the injunction is granted; and the public interest.

98.     Plaintiff seek injunctive relief prohibiting the Secretary of the Department of Natural Resources, and any DNR officials, agents or employees and representatives, from denying them their easement right to Parcel A and/or compelling the DNR and the State through their agents or employees to refraining from harming the rights of transferring the Parcel A to anyone else other than the City or Plaintiffs to avoid any unfair prejudice and maintain the status quo.  Preliminary injunctions serve to "maintain the status quo between parties during the course of litigation." *See Eastside Vend Distributors, Inc. v. Pepsi Bottling Grp., Inc., 396 Md. 219, 241-42 (2006).*

### COUNT SIX
### NEGLIGENCE
### (Pursuant to the Maryland Local Government Tort Claims Act)

99.     Plaintiffs repeat and reiterate each of the allegations contained in the preceding paragraphs.

100.    Defendants, The Mayor and City Counsel for the Town of Ocean City, by and through their official, defendant SMITH, the Assistant Director of Planning and Zoning,  acting in his official capacity and within the scope of his duties, while conducting a ministerial function, owed a duty of care to Plaintiffs to properly calculate zoning requirements when issuing building permit #15-27919.

101.    SMITH by his own admission, breach that duty by miscalculating zoning requirements related to side yard setback and parking, resulting in said permit being rescinded.

102.    As a direct and proximate cause of that breach the Plaintiffs sustain significant monetary

damages.[10]

103.    Plaintiffs seek compensatory damages to the full extent allowed under the statute.

## COUNT SEVEN
## NEGLIGENCE
(Pursuant to the Maryland Local Government Tort Claims Act)

104.    Plaintiffs repeat and reiterate each of the allegations contained in the preceding

paragraphs.

105.    Defendants Mayor and City Counsel for the Town of Ocean City, by and through their

official, defendant MCGEAN, City Engineer, tasked with matters relating to land acquisition by

the City Manager, while acting in his official capacity and within the scope of his duties, while

conducting a ministerial function,  owed a duty of care to Plaintiffs to protect their easement

rights related to the adjoining property known as Parcel A.

106.    Defendant MCGEAN breached that duty of care by failing to insure that Plaintiffs'

easement rights were recorded prior to conveying Parcel A to the Department of Natural

Resources in 2005, causing to Plaintiffs to suffer substantial financial loss both as to the lost

easement it itself and their ability to exercise their property rights to expand their existing home.

107.    As a direct and proximate cause of that breach the Plaintiffs sustain significant monetary

damages.

108.    Plaintiffs seek compensatory damages to the full extent allowed under the statute.

---

[10] Ripeness is not at issue as there no requirement to seek administrative exhaustion by way of a variance where such a request would be futile.  Since a nonconforming use already existed both as to parking and side yard setback, the BZA would have been precluded from granting any exception that increased the nonconforming use. *See Fritz v. Baltimore, 202 Md 265, 272 (1952).   See paragraph 54, infra. Also see n. 7, infra.*
 In addition, the BZA had already indicated by its actions related to Plaintiffs' variance setback request on the westside for a very minor exception that would have had very little negative impact on the objecting neighbors, that a variance request of magnitude needed  to overcome the side yard setback deficiency would have had no chance of being approved, particularly in light of the deference given to neighborhood concerns.

**COUNT   EIGHT**
**(SPECIFIC PERFORMANCE)**
(Defendants Belton, Department of Natural Resources and State of Maryland)

109.    Plaintiffs repeat and reiterate each of the allegations contained in the preceding

paragraphs.

110.    At all times prior to the revocation of the permits in 2015 by the City, the DNR, through

its agents or employees, knew or should have known through constructive, actual or inquiry

notice that the Plaintiff's enjoyed and obtained implied easement across Parcel A, consisting of a

driveway serving and benefitting Plaintiffs' property.

111.    At all times relevant, the DNR had an affirmative duty to recognize the vested rights of

Plaintiffs and return Parcel A back to the City.  Plaintiffs seek to compel the DNR to return the

Parcel A to the City so that purchase the property from the City and fulfill the understood

agreement with the City.


**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for relief against the Defendants, jointly and severally, as

follows:

> a.   A declaration that an easement was created over Parcel A to benefit the
>
>       property of the Plaintiffs in May 2005.
>
> b.   A declaration that the DNR or the State of Maryland failure to return
>
>       Parcel A is unconstitutional under the 5th and 14th Amendments to the U.S.
>
>       Constitution.

c.   Issue a temporary restraining order, and a preliminary and permanent injunction enjoining defendants, DNR and BELTON, their agents, servants, employees, from retaining and/or affecting or harming any rights or interests including any restrictions, conveyance, sale or transfer of Parcel A, in any manner and to compel its return and revert to the CITY.

d.   A Mandatory injunction requiring BELTON, the DNR or State of Maryland, its agents or employees, to immediately return parcel A to the City or Plaintiffs as third party beneficiaries; *Ex Parte Young 209 U.S. 123, 123 (1908).*

e.   Award Plaintiffs compensatory damages against defendants, including for all out of pockets costs and damages resulting from the permits and contracts entered into for the construction of the addition; appraisal fees, loss of rents in the future, loss of use and value of the easement and the addition, past present and future of no less than One Million Dollars to be proven at trial which amount is not adequate to compensate plaintiffs;

f.   Award damages under the Maryland Local Torts Claim Act to the fullest extent;

g.   Costs of suit;

h.   Award Plaintiffs punitive damages as to defendants WILSON and LORAN in their individual capacity.

i.   Award plaintiff costs, interest and reasonable attorneys' fees for this action pursuant to 42 U.S.C. §1983 and other relevant statutes

j.   and such other relief and damages, requested or otherwise, as the Court

deems proper, just and equitable including injunctive and declaratory

relief  as may be required by the interests of justice.


## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury as to all issues permitted by law.




Respectfully submitted,
TSIMPEDES LAW FIRM                                   DATED:  FEBRUARY 5, 2018
                                                                      Washington, DC


/s/ Athan  Tsimpedes
Bar No. 12932
1200 New Hampshire Avenue, NW
Suite 725A
Washington, DC 20036
Ph: 202-464-9910
Fax: 202-747-2947
athan@tsimpedeslaw.com
*Attorney for Plaintiffs*

## VERIFICATION

I swear under penalty of perjury that the contents contained in this complaint are true and correct

based on my personal knowledge.

Robert C. Little.                    2/5/18